WALLACE, Judge.
 

 Diane Rappaport, Alexander Rappaport, and Clearwater City Homes, LLC (CCH), petition this court for a writ of certiorari quashing the circuit court’s order that denied a motion for a protective order sought on behalf of Diane Rappaport, a nonparty to the action pending in the circuit court. The circuit court’s order improperly authorized Mercantile Bank (the Bank) to obtain personal financial information and documents from a nonparty that are unrelated to any claim or defense in the pending action and that have not been shown to be reasonably calculated to lead to the discovery of admissible evidence. Accordingly, we grant the petition and quash the circuit court’s order in part.
 

 THE FACTS AND PROCEDURAL BACKGROUND
 

 In August 2005, the Bank agreed to lend the sum of $2,438,000 to CCH. In connection "with the loan transaction, CCH executed a promissory note to the Bank and Mr. Rappaport executed a continuing unconditional guaranty of the loan.
 
 [1]
 
 Diane
 
 *904
 
 Rappaport is Mr. Rappaport’s wife. Unlike her husband, Mrs. Rappaport did not guarantee or otherwise promise to pay the loan.
 

 In October 2008, the Bank filed an action in the circuit court against CCH and Mr. Rappaport. The Bank’s complaint had two counts. In count one, the Bank sued CCH for damages for nonpayment of the promissory note. Count two of the complaint was an action against Mr. Rap-paport for breach of the guaranty. The Bank did not name Mrs. Rappaport as a party to the action. We also note that the Bank did not plead a claim under the Uniform Fraudulent Transfer Act (UFTA), sections 726.01-.112, Florida Statutes (2008). CCH and Mr. Rappaport filed an answer to the complaint and raised multiple affirmative defenses.
 

 After the complaint was filed, the Bank served a notice of the taking of the deposition of Mrs. Rappaport. Counsel for CCH and Mr. Rappaport filed a motion for a protective order concerning the proposed deposition of Mrs. Rappaport, noting that she “is not a party to the transaction or involved in the loan at issue in any respect.” CCH and Mr. Rappaport objected to the taking of Mrs. Rappaport’s deposition on the ground that “she does not maintain any information that is reasonably calculated to lead to the discovery of admissible evidence.”
 

 In response to the motion for protective order, the Bank asserted that the requested “financial documents and information are particularly relevant because the loan provided to Defendants!] was based, in large part, upon the financial status of Alexander Rappaport and his ability to repay the indebtedness, as evidenced by the continuing obligations to provide financial documentation set forth in the loan documents.” The Bank also argued that the requested information was “not only necessary [to] gather evidence of Defendants’ breach of the promissory note and guaranty ... but also to determine whether there may be additional bases for causes of action based in fraud or fraudulent transfer.” At a hearing on the motion, the Bank emphasized the continuing obligation of CCH and Mr. Rappaport to provide the Bank with pertinent financial information. The circuit court attempted to focus the argument by asking: “And they’re objecting to, I guess, Diane Rappa-port’s financial information. Was she a guarantor?” In response, the Bank’s attorney conceded that Mrs. Rappaport had not guaranteed the loan. He then argued that the discovery of the requested information from Mrs. Rappaport was pertinent under the UFTA.
 

 After the hearing, the circuit court entered an order denying the defendants’ motion for protective order. The circuit court ruled, in pertinent part:
 

 2. Mercantile Bank is permitted to conduct the deposition of Diane Rappa-port and obtain from her, any and all financial documentation and information related to Alexander Rappaport including, but not limited to[,] any and all property owned by Diane Rappaport and Alexander Rappaport or either of them at all times relevant to the instant cause of action.
 

 3. Mercantile Bank is permitted to take the deposition of Diane Rappaport and question her in regard to the financial standing of Alexander and Diane Rappaport.
 

 Thus, before the entry of any judgment, the circuit court ruled that the Bank was entitled to obtain discovery from Mrs. Rappaport concerning not only her husband’s assets but also her personal assets.
 

 In accordance with the circuit court’s order, the Bank rescheduled Mrs. Rappa-port’s deposition for February 12, 2009,
 
 *905
 
 and issued a subpoena duces tecum for deposition to Mrs. Rappaport requiring her to produce numerous documents and financial records.
 
 [2]
 
 The subpoena duces tecum designated thirty-six general categories of documents to be produced at the deposition. The first eighteen items on the list call for Mrs. Rapport to produce the “Defendant’s” records.
 
 [3]
 
 The requests numbered nineteen through thirty-six are substantially similar to the first eighteen but call for the production of Mrs. Rappa-port’s financial records. The period of time for which the documents were to be produced was for the years 2004, 2005, 2006, 2007, and 2008.
 

 In response to an objection to the subpoena, the circuit court amended its earlier order in two minor respects. First, the amendment to the order provided that Mrs. Rappaport was not required to produce any appraisals of property or assets titled solely in her name unless she had acquired the property from Mr. Rappaport on or after December 31, 2004. This amendment limited only two of the eighteen categories of personal financial information that Mrs. Rappaport was required to produce. Second, the amendment to the order limited the time frame for which Mrs. Rappaport was required to produce financial records to the period “from December 31, 2004[,] until present day.” The effect of the second amendment was to delete one year from the beginning of the designated period but to add time at the end of it.
 

 THE AVAILABILITY OF RELIEF BY CERTIORARI
 

 A petition for certiorari is appropriate to review a discovery order when the “order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal.”
 
 Allstate Ins. Co. v. Langston,
 
 655 So.2d 91, 94 (Fla.1995) (citing
 
 Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1099 (Fla.1987)). An order compelling the production of documents by a nonparty is reviewable by certiorari because he or she has no adequate remedy by appeal.
 
 Price v. Hannahs,
 
 954 So.2d 97,100 (Fla. 2d DCA 2007) (citing
 
 Nussbaumer v. State,
 
 882 So.2d 1067, 1072 (Fla. 2d DCA 2004)). Thus, in order to obtain relief, the petitioners must demonstrate a departure from the essential requirements of law and material injury.
 
 See id.
 
 (citing
 
 Syken v. Elkins,
 
 644 So.2d 539 (Fla. 3d DCA 1994),
 
 approved,
 
 672 So.2d 517 (Fla.1996)).
 

 DISCUSSION
 

 The petitioners challenge the circuit court’s order to the extent that it requires Mrs. Rappaport to disclose her personal financial information and to produce her personal financial records.
 
 [4]
 
 As noted above, Mrs. Rappaport was not a
 
 *906
 
 guarantor of the Bank’s loan to CCH, and she was not a party to the litigation pending in the circuit court. Nevertheless, the circuit court’s order authorized the Bank to depose Mrs. Rappaport concerning her personal finances and to require her to produce virtually all of her personal financial records for a period exceeding four years.
 

 “[Personal finances are among those private matters kept secret by most people.”
 
 Woodward v. Berbery,
 
 714 So.2d 1027, 1035 (Fla. 4th DCA 1998) (citing
 
 Winfield v. Div. of Pari-Mutuel Wagering,
 
 477 So.2d 544 (Fla.1985)). The right of privacy set forth in article 1, section 23, of the Florida Constitution “undoubtedly expresses a policy that compelled disclosure through discovery be limited to that which is necessary for a court to determine contested issues.”
 
 Id.
 
 at 1036. It follows “that the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant.”
 
 Straub v. Matte,
 
 805 So.2d 99, 100 (Fla. 4th DCA 2002). For these reasons, this court has said:
 

 A protective order should be granted when the pleadings, at the time a trial court rules upon a motion for protective order, indicate that the financial records of a nonparty are not related to any pending claim or defense, and do not indicate that the information is shown to be reasonably calculated to lead to the discovery of admissible evidence.
 

 Walter v. Page,
 
 638 So.2d 1030, 1031 (Fla. 2d DCA 1994) (citing
 
 Jerry’s South, Inc. v. Morran,
 
 582 So.2d 803 (Fla. 1st DCA 1991)).
 

 In response to the petition, the Bank offers two arguments concerning why the circuit court’s order authorizing its discovery of Mrs. Rappaport’s personal financial information and records is appropriate.
 
 [5]
 
 First, the Bank argues that Mrs. Rappa-port’s personal financial information and records are relevant to its potential fraudulent transfer claim. Second, the Bank contends that it relied on Mrs. Rappaport’s financial information in reaching the decision to make the loan to CCH. We will examine each of these arguments separately below.
 

 On its first point, the Bank relies — as it did in the circuit court — on the decision in
 
 Friedman v. Heart Institute of Port St. Lucie, Inc.,
 
 863 So.2d 189 (Fla.2003). We agree that the
 
 Friedman
 
 case is instructive, but it does not support the Bank’s position. In that case, Dr. Friedman was sued by his former employer for an alleged breach of his employment contract.
 
 Id.
 
 at 191. The plaintiff subsequently amended its complaint to add a count asserting a claim under the UFTA and added the alleged fraudulent transferee as a party to the action.
 
 Id.
 
 Dr. Friedman moved to stay the fraudulent transfer claim until the plaintiff obtained a judgment on its underlying claim for damages.
 
 Id.
 
 A stay would have delayed discovery on the fraudulent transfer claim, including inquiry into the financial circumstances of the alleged fraudulent transferee. The trial court denied Dr. Friedman’s motion for stay.
 
 Id.
 

 On Dr. Friedman’s petition for review by certiorari, the Fourth District concluded that the trial court did not abuse its discretion in denying the motion for stay and denied the petition.
 
 Friedman v. Heart Inst. of Port St. Lucie, Inc.,
 
 806
 
 *907
 
 So.2d 625, 627 (Fla. 4th DCA 2002). The Fourth District reasoned that it is not necessary for a creditor to have a judgment in order to proceed under the UFTA.
 
 Id.
 
 at 626. The creditor must merely have a “claim.”
 
 Id.
 
 On further review in the supreme court, the court approved the Fourth District’s decision.
 
 Friedman,
 
 863 So.2d at 195.
 

 Here, the facts differ significantly from the facts in
 
 Friedman.
 
 Unlike Dr. Friedman’s former employer, the Bank has not alleged a claim under the UFTA, nor has it added the putative fraudulent transferee as a defendant in the pending action. Thus the Bank’s reliance on the supreme court’s decision in
 
 Friedman
 
 is unavailing.
 

 This court’s decision in
 
 Lawhon v. Mason,
 
 611 So.2d 1367 (Fla. 2d DCA 1993), is pertinent to the Bank’s argument. In
 
 La-whon,
 
 the plaintiffs in a personal injury case moved for a prejudgment order to prohibit the defendant — who was allegedly underinsured — from transferring assets.
 
 Id.
 
 at 1368. The trial court entered an order requiring the defendant to give the plaintiffs ten days’ notice before transferring any assets with a value in excess of $500.
 
 Id.
 
 Next, the defendant sought relief from the order by certiorari.
 
 Id.
 
 This court granted the defendant’s petition and quashed the trial court’s order. We explained:
 

 [The plaintiffs] contend that a tort claimant may be entitled to enjoin fraudulent transfers of assets even though the claim is contingent and not yet reduced to judgment. While this may be so, [the plaintiffs] have yet to file suit under the Uniform Fraudulent Transfer Act. Thus [the defendant] appropriately describes their approach as “attempting to ‘piggyback’ the discovery process of an unfiled Chapter 726 lawsuit onto a simple negligence claim.”
 

 Id.
 
 (citation omitted). Although the discovery of Mrs. Rappaport’s personal financial information might be relevant to a fraudulent transfer claim, the Bank has not made such a claim against Mrs. Rappa-port in any pleading. The circuit court’s order improperly allowed the Bank to “piggyback” the discovery that might be appropriate to a claim under the UFTA onto their contractual claims against CCH and Mr. Rappaport.
 

 In its second argument, the Bank contends that inquiry into Mrs. Rappaport’s finances was justified because it had relied on her personal assets in reaching the decision to make the loan to CCH. According to the Bank, CCH and Mr. Rappaport submitted the personal financial information of Mrs. Rappaport for the Bank’s consideration along with their own financial statements.
 

 We find this argument unpersuasive for three reasons.
 
 [6]
 
 First, there is scant support — if any — -in the record for the proposition that the Bank actually considered or relied on information concerning Mrs. Rappaport’s financial circumstances before making the loan to CCH. Second, the Bank’s argument strains credulity to the breaking point. We find it difficult to believe that a financial institution would make a lending decision — in whole or in part — based on the assets or income of a person who had no obligation to repay the loan. Third, assuming that the Bank did rely on Mrs. Rappaport’s personal finances in deciding to make the loan, such reliance would not give the Bank rights it would otherwise lack to obtain discovery from
 
 *908
 
 Mrs. Rappaport, a nonparty, concerning her personal financial information.
 

 CONCLUSION
 

 The circuit court’s order departs from the essential requirements of law because the order requires Mrs. Rappaport, a non-party, to disclose personal financial information that is neither relevant to the Bank’s claims nor reasonably calculated to lead to the discovery of admissible evidence. To the extent that the circuit court’s order requires Mrs. Rappaport to disclose her personal financial information, it undeniably violates her right to privacy. The disclosure of Mrs. Rappaport’s personal financial information may cause irreparable harm which cannot be remedied on appeal. Accordingly, we quash the circuit court’s order to the extent that it requires Mrs. Rappaport to provide information about her personal finances and to produce her personal financial records.
 

 Petition granted; order quashed in part.
 

 WHATLEY and LaROSE, JJ., Concur.
 

 [1]
 

 . Our limited record suggests that the promissory note was secured by a mortgage on a townhouse project to be developed by CCH.
 

 [2]
 

 . On February 12, 2009, this court entered an order staying Mrs. Rappaport's deposition and any obligations she had under the subpoena duces tecum.
 

 [3]
 

 . Although there are two defendants, the reference to the “Defendant's” records is phrased in the singular. However, a three-page list of “Definitions” preceding the requested items includes the following statement: “As used herein, the singular of any word or phrase includes the plural and the plural includes the singular....” Therefore, we read the designation as calling for the financial records of both defendants.
 

 [4]
 

 .The petitioners do not challenge the portion of the circuit court's order that requires Mrs. Rappaport to provide prejudgment discovery concerning the financial affairs of CCH and Mr. Rappaport. Accordingly, we express no opinion concerning the Bank’s right to obtain prejudgment discovery concerning the defendants' financial affairs.
 

 [5]
 

 . We have considered the Bank's argument that the entry of the second order that amended the order denying the motion for protective order in two minor particulars renders the entire petition moot. This argument is without merit, and we reject it without further comment.
 

 [6]
 

 . We note that the Bank did not make this argument in the circuit court.
 
 Cf. Malu v. Sec. Nat'l Ins. Co.,
 
 898 So.2d 69, 73 (Fla. 2005) (holding that the “tipsy coachman rule” permits an appellate court to affirm a trial court order on the basis of an alternative theory which was not asserted in the court below).